IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANTE MITCHELL : CIVIL ACTION
: NO. 09-4459
v. :
:
CITY OF PHILADELPHIA, et al. :

O'NEILL, J.                                                             MARCH 29, 2011

## MEMORANDUM

Plaintiff has sued the City of Philadelphia, detective Robert Redanauer and officer Thomas Strain, alleging that they violated his constitutional rights during a May 12, 2008 traffic stop. Presently before me are defendants' motion for summary judgment and plaintiff's response in opposition thereto.

## BACKGROUND

Plaintiff's recitation of the events giving rise to this lawsuit differs significantly from that of defendants. Plaintiff avers on May 12, 2008, he was sitting in his car on the 5000 block of Hutchinson Street in Philadelphia. Mitchell Aff. ¶ 1. He had marijuana stored in his underwear where it could not be seen. Id. at ¶ 2. Then, "[m]any police cars came out of nowhere," id. at ¶ 3, and, without first requesting that plaintiff reveal what he was hiding in his clothing, "one police officer tried to go into [his] underpants" to get the marijuana. Id. at ¶ 4. While plaintiff was being arrested by six officers, one of them said "mace him, mace him" and another said "take him down." Id. at ¶ 6. Plaintiff felt his legs come out from under him and then his head hit the ground. Id. at ¶ 7. While plaintiff was handcuffed on the ground, one of the officers stepped on plaintiff's shoulder and another officer stepped on plaintiff's face. Id. at ¶ 8. Plaintiff further avers that he never resisted arrest, struck an officer or attempted to destroy evidence. Id. at ¶ 9-

10.

Defendants have produced evidence suggesting that on the date of the incident Philadelphia police officer Richard Redanauer[1] pulled over the vehicle that plaintiff was driving. Defendant Strain, also a Philadelphia police officer, arrived at the scene shortly after the vehicle was stopped. Strain testified that, upon his arrival, he smelled a "strong odor of marijuana." Strain Dep. 6:16-18 (Jan. 22, 2010) (Defs.' Ex. A). The officers asked plaintiff to exit his vehicle.[2] While plaintiff was standing beside his car, Strain noticed a "bulge in [plaintiff's] waistband" and "a white bag hanging from the top of [plaintiff's] pants." Id. at 6:2-7. The officers ordered plaintiff to place his hands on top of the car, id. at 7:8-9, at which time, according to Strain, plaintiff "started to resist by throwing elbows and striking [Strain]." Id. at 7:11-14. According to Strain, plaintiff also tried to discard the substance in the white bag by "rubbing it with his feet into the ground." Id. at 8:22-9:2. Following a "brief struggle," Richard Redanauer and Strain forced plaintiff to the ground and placed him in handcuffs. Id. at 7:17-19, 17:7-9. The officers recovered a white plastic bag filled with a "green weedy substance" that they believed to be marijuana. Id. at 7:21-23. Although Strain denied striking plaintiff or hearing anyone say "mace him," Strain admitted that "a lot of force had to be used to get [plaintiff] under control." Id. at 22:19-23:2.

Defendant Robert Redanauer was the police detective responsible for preparing plaintiff's

---

[1] I note that plaintiff has named Robert Redanauer but not Richard Redanauer as a defendant in this matter. For the sake of clarity, I will refer to the Redanauers by their first names.

[2] The evidence in the record does not indicate which officer directed plaintiff to exit the vehicle. Strain Dep. 6:20-7:1 (Jan. 22, 2010) (Defs.' Ex. A).

post-arrest paperwork. Robert Redanauer Dep. 6:8-10 (Jan. 22, 2010) (Defs.' Ex. B). Robert Redanauer testified that he does not know or recognize plaintiff and that he was not present at the scene of plaintiff's arrest. Id. at 19:2-12.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on

3

unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

ANALYSIS

Plaintiff concedes that the City of Philadelphia and Robert Redanauer should be dismissed from this case. See Pl.'s Br. at 1 ("It is conceded that the City of Philadelphia and Detective Robert Redanauer should be dismissed from this case."). I will accordingly dismiss the claims against those two defendants.

Defendant Strain argues that I must enter judgment in his favor because he is entitled to qualified immunity with respect to the excessive force claim. He also argues that the state law claims against him should be dismissed because he enjoys immunity from such claims under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541. Plaintiff disagrees, arguing that there exists a genuine issue of material fact as to defendant Strain's liability and therefore that summary judgment is inappropriate.

I. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Curley v. Klem, 499 F.3d 199, 206 (3d

Cir. 2007), citing Couden v. Duffy, 446 F.3d 483, 501 (3d Cir. 2006) (Weis, J., dissenting). In order to decide whether Strain is entitled to qualified immunity, I must answer two questions: (1) whether defendant's alleged actions violated plaintiff's constitutional rights; and, (2) if so, whether the constitutional right at issue was clearly established. See Saucier v. Katz, 533 U.S. 194, 201-02 (2001) partially overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009). I may address these two questions in either order. Pearson, 555 U.S. at 818.

"In an excessive force case, whether there is a constitutional violation is properly analyzed under the Fourth Amendment's objective reasonableness standard[.]'" Curley, 499 F.3d at 206 (internal quotation marks omitted). "The relevant inquiry is 'the reasonableness of the officer's belief as to the appropriate level of force[,]' which 'should be judged from [the officer's] on-scene perspective,' and not in the '20/20 vision of hindsight.'" Id., citing Saucier, 533 U.S. at 205. The officer's reasonableness must be analyzed in light of the totality of the circumstances and requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 207, quoting Graham v. Connor, 490 U.S. 386, 396 (1989).

Strain argues first that there are "no facts of record" from which a reasonable jury could conclude that he violated plaintiff's right to be free from excessive force. Defs.' Br. at 12 (emphasis in original). In support of this argument he asserts that, upon ordering plaintiff to place his hands on his vehicle, plaintiff struck Strain repeatedly with his elbows and "actively resist[ed] arrest" until Strain forced him to the ground and handcuffed him. Id.

Strain's analysis ignores the two affidavits submitted by plaintiff. In the first, plaintiff

5

avers that he did not strike an officer, resist arrest or attempt to destroy evidence at any point during the incident. See Mitchell Aff. ¶¶ 9-10. Despite his cooperation, Strain and other officers "tried to go into [his] underpants," slammed his head into the ground while he was handcuffed and stepped on his shoulder and on his face. See id. at ¶¶ 4, 7, 8. The second affidavit, prepared by a witness to the incident, contains similar averments–that although plaintiff did not resist arrest or strike an officer, "[o]ne police officer pulled [plaintiff's] shins and [plaintiff] fell face down to the ground" and another officer stepped on plaintiff. See Goldberg Aff. at ¶¶ 4, 7, 8.

The genuine issues of material fact as to what occurred on May 12, 2008 preclude a finding that Strain is entitled to qualified immunity. See Saucier, 533 U.S. at 216 (Ginsburg, J., dissenting) ("When a plaintiff proffers evidence that the official subdued her with a chokehold even though she complied at all times with his orders, while the official proffers evidence that he used only stern words, a trial must be had."); Curley, 298 F.3d at 278 ("Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."). Reviewing the evidence in the light most favorable to plaintiff, as I must, there is evidence from which a reasonable jury could conclude that Strain acted unreasonably. If, as plaintiff's evidence suggests, plaintiff was cooperating peacefully with the officers when Strain slammed him to the ground and stepped upon him, Strain would have violated plaintiff's clearly established constitutional rights under the Fourth Amendment.[3] In order to determine whether Strain acted reasonably, there must first be findings

---

[3] I note again that defendants' description of the circumstances surrounding plaintiff's arrest is dramatically different from plaintiff's. I leave it to the jury to decide which version of the events is accurate.

of "historical fact" as to how plaintiff was acting at the time of his arrest and how much force Strain used to subdue him. See id. ("Thus, while we have recognized that it is for the court to decide whether an officer's conduct violated a clearly established constitutional right, we have also acknowledged that the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue."); see, e.g., Wilhere v. Del. Cnty., No. 09-22, 2010 WL 1381664, at *7 (E.D. Pa. Apr. 1, 2010) (denying without prejudice the defendant's motion for summary judgment on the basis of qualified immunity on the grounds that there existed genuine issues of material fact as to the circumstances surrounding the plaintiff's arrest."). Such fact-finding will be entrusted to the jury after trial. However, the ultimate decision as to whether Strain is entitled to qualified immunity is a matter of law that will be decided by the Court. See Curley v. Klem, 499 F.3d at 211 ("We therefore take the opportunity to reiterate and clarify a central message from [Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004)]: whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury.").

II.  Immunity Under the Political Subdivision Tort Claims Act

Strain also argues that the state law claims against him are barred by the Political Subdivision Tort Claims Act, 42 Pa. Const. Stat. § 8541 et seq. The Tort Claims Act provides "that a government official may only be held liable for conduct that 'constitute[s] a crime, actual fraud, actual malice or wilful misconduct.'" Jones v. City of Phila., No. 08-3336, 2011 WL 710212, at *5 (E.D. Pa. Feb. 25, 2011), citing 42 Pa. Cons. Stat. §§ 8542, 8550. In most cases, the term "willful misconduct" is synonymous with the term "intentional tort." Renk v. City of

7

Pittsburgh, 641 A.2d 289, 293 (Pa. 1994), citing King v. Breach, 540 A.2d 976, 981 (Pa. Cmwlth. Ct. 1988). In a case that alleges police misconduct, however, "to rise to the level of willful misconduct, a police officer must intend to commit the intentional tort." See Brummell v. City of Harrisburg, No. 09-1816, 2010 WL 3896382, at *3 (M.D. Pa. Sept. 30, 2010) (emphasis in original), citing Pettit v. Namie, 931 A.2d 790, 801 (Pa. Commw. Ct. 2007). "A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive." Renk, 641 A.2d at 293.

Strain argues that there is no evidence from which a reasonable jury could conclude that he used unnecessary or excessive force in arresting plaintiff. Defs.' Br. at 20. For the reasons discussed supra with respect to Strain's qualified immunity claim, I disagree. There remains a genuine issue of material fact as to whether Strain used more force than necessary in effectuating the arrest. Because a reasonable jury could conclude that Strain committed willful misconduct, I will deny his motion for summary judgment insofar as he argues that he is entitled to immunity under Political Subdivision Tort Claims Act.

## CONCLUSION

The claims against the City of Philadelphia and Robert Redanauer will be dismissed pursuant to plaintiff's concession. The motion for summary judgment will be denied with respect to Thomas Strain.

An appropriate Order follows.